517 S.E.2d 344 (1999)
237 Ga. App. 471
In the Interest of M.N.H., a child.
No. A99A0213.
Court of Appeals of Georgia.
April 1, 1999.
*345 Perrotta & Associates, Anthony N. Perrotta, Brian R. Cahn, Cartersville, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney *346 General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Velma C. Tilley, Cartersville, for appellee.
BLACKBURN, Judge.
Appellant, the biological mother of M.N.H., appeals the juvenile court's termination of her parental rights, contending: (1) that the evidence was insufficient to support the termination; (2) that the juvenile court erred by taking judicial notice of certain orders issued by it with regard to prior deprivation proceedings; (3) that the juvenile court erred by admitting evidence of appellant's prior misdemeanor convictions; (4) that the juvenile court erred by allowing appellant's psychologist to testify in violation of the psychologist-patient privilege; and (5) that the juvenile court erred by admitting the results of a drug test taken by appellant.[1] For the reasons set forth below, we affirm the decision of the juvenile court.
1. On appeal, we must determine
whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Citations and punctuation omitted.) In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
M.N.H. was born prematurely on July 21, 1996, and tested positive for cocaine. Appellant admitted using cocaine on the night before she went into labor and once a week during the two months prior to M.N.H.'s birth. Appellant also admitted to using marijuana on a regular basis during the year prior to M.N.H.'s birth. M.N.H. was born with several physical infirmities, and she had to be held in the hospital for a number of weeks following her birth. During that time, the Department of Family & Children Services (DFACS) set up a safety plan for appellant to ensure that she began to address her drug addiction and that M.N.H. would be released into a stable home environment.
Appellant failed to satisfy the goals of the safety plan, and, prior to M.N.H.'s release, appellant tested positive for cocaine use. As a result, the juvenile court found M.N.H. to be a deprived child on September 25, 1996, and granted temporary custody to DFACS. A detailed reunification plan was then developed, the major goal of which was for appellant to become drug free.[2] Appellant never satisfied the requirements of this plan. In fact, a number of motions for contempt had to be filed by DFACS due to appellant's continuing drug use and refusal to follow her reunification plan.[3] On March 12, 1998, the juvenile court issued an order terminating appellant's parental rights to M.N.H.
Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is "present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81(a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81(b)(4)(A).... In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
In the Interest of V.S., 230 Ga.App. 26, 27, 495 S.E.2d 142 (1997).

*347 As appellant did not appeal the original order[s] of the juvenile court finding that her children were deprived, she cannot now complain about that finding. In the Interest of E.C., 225 Ga.App. 12, 14-15, 482 S.E.2d 522 (1997). Therefore, only the three remaining criteria must be considered.
In the Interest of V.S., supra at 29(1), 495 S.E.2d 142.
The evidence of record supports the juvenile court's determination that appellant's inability to adequately care for M.N.H. was the cause of her deprivation. As an initial matter, M.N.H. was born with respiratory, feeding, and developmental problems, and the baby tested positive for cocaine in her system. In addition, appellant failed to satisfy the goals of her reunification plan, despite several motions for contempt brought by DFACS to convince her to do so. Accordingly, appellant has shown a failure to consider the needs of her child from the point of her conception to the present date, and her conduct provides clear and convincing evidence that M.N.H.'s deprivation is the result of her neglectful childrearing.
The record also supports a finding that M.N.H.'s deprivation would be likely to continue in appellant's care.
Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. The court was entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue [if] the [child was] reunited with [her] mother.
(Citation and punctuation omitted.) In the Interest of R.N., supra at 204(1)(c), 480 S.E.2d 243. In this case, appellant was given numerous chances to modify her behavior in order to regain custody of her children. However, after years of dealing with DFACS, appellant failed to satisfy the goals of her reunification plan, and she continued her drug use.
The juvenile court's finding that appellant's child would likely be harmed by the continued deprivation is also well founded. Although appellant testified that she had started to attend group therapy and Narcotics Anonymous in January 1998, she provided no proof of her attendance. Furthermore, not long before the termination hearing, appellant exhibited "drug seeking" behavior by obtaining narcotic pain medication from an emergency room, and she tested positive for marijuana use on February 24, 1998, within a week of her scheduled termination hearing. In addition, psychological tests performed on appellant indicated the presence of sadistic personality disorder, schizotypal disorder, obsessive-compulsive personality disorder, paranoid personality disorder, depressive personality disorder, and self-defeating personality disorder. Appellant's psychological profile and inability to appropriately alter her behavior provide clear and convincing evidence that M.N.H. would likely be harmed by continued deprivation.
Finally, the record supports a finding that the best interests of the [child] are served by termination of appellant's rights. The same factors which show [her] inability to rear her [child] may also provide evidence that termination of her rights would be in the best interests of her [child].
In the Interest of D.W., 235 Ga.App. 281, 283, 509 S.E.2d 345 (1998). The fact that appellant now promises to alter her behavior and admits to having drug addictions for which she will seek treatment does not alter the outcome of this case. "`[T]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.'" In the Interest of D.I.W., 215 Ga.App. 644, 646(1), 451 S.E.2d 804 (1994).
The record also shows that appellant failed to satisfy the requirements of her reunification plan for more than a year prior to the termination of her rights, in accordance with OCGA § 15-11-81(b)(4)(C)(iii).
2. Appellant contends that the juvenile court erred by taking judicial notice of 25 of its orders from prior deprivation proceedings concerning appellant's parental rights. Appellant, however, made no objection *348 to the admission of these orders at trial. As such, she has waived any right to complain about their admission for the first time on appeal. In the Interest of R.M.M., 232 Ga.App. 553, 554(1), 502 S.E.2d 480 (1998).
3. Appellant contends that the juvenile court erred by admitting evidence of appellant's prior misdemeanor convictions for shoplifting, drug use and possession prior to M.N.H.'s birth. Specifically, appellant objected to the admission of this evidence on the basis of its relevancy. Even if we were to accept the efficacy of appellant's argument on this matter, the introduction of this evidence would not require reversal, as there was ample evidence to support the termination without consideration of the misdemeanor convictions. See, e.g., In the Interest of J.T.S., 185 Ga.App. 772, 773(2), 365 S.E.2d 550 (1988) (admission of hearsay evidence not reversible error where other evidence supporting termination was ample). Moreover, appellant has failed to identify any harm to her by the admission of these documents.
4. Appellant contends that the juvenile court erred by allowing appellant's psychologist to testify in violation of the psychologist-patient privilege. However, "the psychologist-patient privilege set forth in OCGA § 43-39-16 arises only when the patient voluntarily seeks treatment from the psychologist, whereas here [appellant] saw [the psychologist] only at the instigation of DFACS and received no treatment." (Emphasis in original.) In the Interest of R.M., 194 Ga.App. 888, 889(1), 392 S.E.2d 13 (1990). Moreover, appellant made no objection to the introduction of this testimony during trial.
5. Appellant contends that the juvenile court erred by admitting the results of a drug test taken by her on February 24, 1998. The basis for appellant's objection was that the test showed that she had been taking illegal drugs although she claimed that she had not been. This is not a valid objection which would prevent admission of the drug test. Moreover, when appellant submitted to the test, she voluntarily signed an attached waiver form which stated: "I further consent to the written results of said analysis being admitted as evidence in Court, without objection."
Judgment affirmed.
BEASLEY, P.J., and Senior Appellate Judge HAROLD R. BANKE concur.
NOTES
[1] M.N.H.'s father does not appeal the termination of his parental rights.
[2] Other requirements of the plan included submitting to random drug screens, submitting to a psychological evaluation, and attending parenting classes.
[3] For example, appellant continued to use drugs during her pregnancy with M.N.H.'s brother who was born on December 15, 1997. DFACS sought immediate custody of this child after his birth.