A02A2253. IN THE INTEREST OF S. S. et al., children.
(576 SE2d 99)

PHIPPS, Judge.

F. G., the biological mother of three children, S. S., F. G., and J. B., appeals an order terminating her parental rights. She challenges the juvenile court's finding of deprivation and that court's determination that the children's best interests would be served by terminating her rights. Because the record contains the requisite evidence to support the juvenile court's findings, we affirm.

In considering the sufficiency of evidence in a termination of parental rights case, we review the evidence in the light most favorable to the juvenile court's determination.[1] Moreover, we defer to the juvenile court's factfinding when the evidence shows that a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost.[2]

When so reviewed, the evidence shows that two days after F. G. gave birth to her son, J. B., in March 1999, the Glynn County Department of Family and Children Services (DFACS) obtained temporary legal custody of J. B. and his two older half-sisters.[3] Their placement was the result of F. G.'s use of illegal drugs during her pregnancy. Before the birth of J. B., DFACS had counseled F. G. and warned her about the consequences of further drug use during pregnancy.

In April 2000, the court entered a consent order that included a finding that the three children were deprived. DFACS developed a case plan to reunite F. G. with her children. The reunification plan required F. G. to: (1) remain drug and alcohol free and complete drug

---

[1] *In the Interest of D. B.*, 242 Ga. App. 763 (531 SE2d 172) (2000).
[2] *In the Interest of Z. B.*, 252 Ga. App. 335 (556 SE2d 234) (2001).
[3] S. S. was almost three years old, and F. G. was seventeen months old.

counseling; (2) maintain a stable residence; (3) maintain stable employment; and (4) maintain a meaningful relationship with the children.[4]

After nearly eighteen months of state custody of the three children, by then ages five, three, and one, DFACS filed a petition to terminate F. G.'s parental rights. After a two-day hearing in January 2002, the juvenile court found that F. G. had failed to meet the four requirements of the reunification plan, and as discussed below, the record supports that determination.

The record shows that while her children were in state custody, F. G. was asked to submit to 19 drug screens. She either refused to comply or failed to appear for testing six times. Eight drug screens were positive, five were negative, and one had signs of adulteration. F. G. did not complete any drug treatment program, a fact that she acknowledged at the hearing, then retracted, claiming that she had attended a program "on my own," even though she could not provide any verification for that claim.

Nor did F. G. satisfy the requirements that she keep stable housing and employment. Since the inception of the case plan, F. G. reported seven different residences. As of the second day of the hearing, F. G., who had been served with a dispossessory warrant, faced imminent eviction for nonpayment of rent. Her landlord testified that when she asked F. G. about the unpaid rent, F. G. cursed her, called her names, and said that she did not have to pay the rent. While blaming the landlord for not making certain repairs to the premises, F. G. ultimately admitted that her housing was unsuitable for children due to its electrical problems.

Nor did her employment history reflect steady employment. Her caseworker testified that F. G. had not kept a job for more than four months. Although F. G. allegedly held nine different jobs since January 1, 2001, contact with her purported employers often showed that she had not worked there or had failed to return after the initial interview. One employer fired her "[d]ue to her temper." Two other employers also reported firing her. She admitted that after hitting a co-worker at work, she had quit before she could be fired.

As to the requirement that F. G. achieve a meaningful relationship with her children, caseworkers compiled evidence documenting F. G.'s blatant parenting deficiencies. She admitted not having paid any child support for the children. Of sixty-five scheduled visits, on twelve occasions she did not appear and on five others she was more than twenty minutes late. During 26 of 53 visits, caseworkers noted

---

[4] Over the next 18 months, DFACS developed other case plans containing virtually the same elements.

that F. G. exhibited inappropriate conduct. Observers documented misconduct and antagonistic behavior by F. G. that included ignoring a child or children, berating caseworkers or her children, hitting or threatening to hit a child, using obscene language, cursing at foster parents, or behaving in a sexually provocative manner toward a boyfriend during her visits. Jennifer Minchew, a caseworker, testified that J. B. is "terrified of [his mother] most of the time." During one visit, F. G. "snatched him from the caseworker" and told him to "shut up." F. G. warned him "not to be a sissy" and said that "he was going to be a little faggot." On another occasion, while J. B. was contentedly playing with his siblings, "[F. G.] got down on all fours and started barking at him like a dog and he was literally flinching and backing up and crying." Minchew also recounted how F. G. used "atrocious" profanity during the sessions with the children.

The children's court-appointed special advocate submitted a written report recommending that F. G.'s parental rights be terminated. The advocate observed that F. G. "has continually shown that the welfare of her children is not her priority." In reaching her recommendation, the special advocate wrote, "[F. G.] has spoken loud and clear that she is unwilling or unable to sacrifice her drug usage in order to regain custody." Similarly, the children's guardian ad litem recognized that F. G. "has a history of chronic unrehabilitated use of controlled substances with the effect of rendering her incapable of providing for the needs of the children." The guardian submitted written findings to the court to advocate termination of her parental rights.

1. Contending that the juvenile court erred in terminating her parental rights, F. G. asserts that the record lacks clear and convincing evidence to establish that the children are currently deprived and are likely to experience future deprivation. She claims that the evidence shows that she visited her children, maintained "meaningful contact" with them, and demonstrated "consistent employment." While conceding that she held more than one job during the period of DFACS's custody, F. G. claims that no evidence shows that she "was ever without a job at any one point." She further argues that "[a]t no point did DFCS present clear and convincing evidence of her lack of housing." F. G. also points out that she had numerous negative drug screens and had sought help for her narcotic use. In sum, F. G. argues that she met the reunification plan's goals for housing, employment, and having a meaningful relationship with her children and claims her sole shortcoming was "the lack of successful drug treatment."

The record belies F. G.'s arguments. Evidence of past conduct may properly be considered in determining whether the deprivation would be likely to continue if the children were returned to the par-

ent.[5] The consent order to which F. G. agreed found the children deprived. Other evidence plainly indicates that F. G. did not fulfill the requirements of the reunification plan to maintain stable housing and employment. The evidence clearly established that F. G.'s ability to parent her children properly was impaired by a continuing drug problem. In fact, F. G. admitted during the hearing that she needed further substance abuse treatment. From this evidence, the court was authorized to find the children are deprived, the deprivation is likely to continue, and the deprivation is likely to cause serious physical, mental, emotional, and moral harm to the children.[6] In light of this evidence, especially F. G.'s consistent failure to obtain drug treatment or steady employment and her inability to provide a safe, secure, and suitable home for the children, we find that the juvenile court did not err in terminating F. G.'s parental rights to these three children.[7]

2. F. G. contends that the juvenile court erred in terminating her parental rights because the record lacks clear and convincing evidence that such termination would be in the best interests of the children. She argues that she had "a strong familial bond" with her children.

The evidence demonstrates the contrary. A caseworker testified that during 26 of 53 supervised visitations, F. G. either ignored, berated, hit, or threatened to hit the children. But even assuming arguendo that F. G. wishes to have or to continue to have a strong familial bond with the children, the evidence clearly shows that F. G. failed abysmally to achieve the stable housing, employment, and meaningful relationship required for reunification. F. G.'s inchoate aspiration for a familial bond apparently did not provide sufficient motivation for her to implement the requisite, essential changes to her life and lifestyle. As one caseworker concluded, "[i]t's my opinion she has no desire to work this case plan" or to work with DFACS "to get her children back." In light of the record before us, we find that the juvenile court was authorized to find that the termination of F. G.'s parental rights is in the best interests of the children.[8]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JANUARY 9, 2003.

---

[5] *In the Interest of J. O. L.*, 235 Ga. App. 856, 858 (510 SE2d 613) (1998).

[6] See *In the Interest of T. F.*, 250 Ga. App. 96, 99 (1) (a) (550 SE2d 473) (2001).

[7] See *In the Interest of M. J. T.*, 217 Ga. App. 356, 358 (457 SE2d 265) (1995).

[8] See *In the Interest of J. M. D.*, 249 Ga. App. 457, 460 (548 SE2d 454) (2001) (termination justified even though mother made some progress toward goals).

*Donald C. Gibson*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Stephanie B. Hope, Dorothy R. Avera, James A. Chamberlin, Jr.*, for appellee.