A03A1128. In the Interest of G. C. et al., children.
(588 SE2d 297)

Miller, Judge.

The mother of four boys, G. C. (age three), P. C. (age six), C. C. (age four), and A. C. (age two), appeals from the juvenile court's order terminating her parental rights. She contends that the State did not prove by clear and convincing evidence that her parental rights should have been terminated, and failed to prove that it is not in the best interests of the children to be placed in the custody of relatives. For the following reasons, we affirm.

On appeal, we must determine

> whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.

(Citations and punctuation omitted.) *In the Interest of C. L. R.*, 232 Ga. App. 134 (1) (501 SE2d 296) (1998).

The evidence showed that the Department of Family and Children Services (DFCS) first became involved with the children in June 1999 because of the terrible living conditions (there was no hot water, heat, or food in the home). The children were exposed to electrical wires and animal feces in the home, and to hazardous items in the yard including buckets of oil and old batteries. The children would not speak, would not eat, and would not use the toilet. The oldest child, P. C., had developmental problems as a result of poor nutrition and underdeveloped social skills.

The evidence showed that DFCS developed at least five reunification plans for the parents between 1999 and 2002. Those plans required the parents to form communication skills with each other, maintain contact with the children, complete parenting classes, maintain their utilities, maintain a clean and safe home, and participate in drug and alcohol counseling, domestic violence counseling, and marriage counseling. The parents failed to complete any of the requirements of the first plan except for visiting the children. Some repairs were made on the home, but they were not maintained.

P. C., G. C., and C. C. were taken into DFCS custody on November 5, 1999, and A. C. was taken into custody on March 28, 2000. In March 2000, a DFCS caseworker found holes in the floor of the home, and mousetraps on the kitchen floor. The March 2000 plan for

reunification required that the parents complete parenting classes, maintain a safe and clean home, and maintain all utilities. They completed the parenting classes but failed to maintain a clean and safe home. The parents did subsequently purchase a new mobile home at the end of the case plan. However, an ongoing issue with respect to the home was that the skirting or underpinning on the mobile home was not complete, leaving an open area under the home where the children would have access to wires and pipes. A DFCS employee noted that although both parents were employed, they could not account for how their money was spent and did not contribute to the children. They had a combined income of $2,900 per month and bills totaling only $1,505.

Following the third case plan, the parents failed to maintain a safe and clean home and there was evidence that the children had been left unattended. Following the fourth case plan, the parents still failed to maintain a clean and safe home. The children were constantly removed from the home and placed in foster care as a result of the parents' failure to provide proper care.

When P. C. was four years old, he was diagnosed with an impacted bowel, weighed less than twenty pounds, and could not speak normally but "mumbled simple words." P. C. also contracted head lice while in his parents' care. The father of the children had had about ten arrests dating back to 1996, including one pending charge of possession of methamphetamine at the time of the termination hearing. The mother had a pending charge of possession of a Schedule II pill outside of its original container, and had been previously arrested for writing bad checks. The father also had a history of driving under the influence, theft by taking, simple battery, obstruction of an officer, vehicle theft, and driving with a suspended license.

In March 2002, DFCS filed a petition to terminate parental rights. Following a hearing, the trial court found clear and convincing evidence of parental misconduct and determined that it was in the best interests of the children that parental rights be terminated. The court also found that it was in the best interests of the children not to be placed with relatives. The mother now appeals from that order.

1. The mother argues that the trial court erred in terminating her parental rights. "Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability." (Citation and punctuation omitted.) *In the Interest of M. N. H.*, 237 Ga. App. 471, 472 (1) (517 SE2d 344) (1999). In the second prong, the juvenile court must consider whether termination of parental rights would be in the best interest of the child. Id.

(a) *Parental Misconduct.* Parental misconduct is found when the child is deprived, the cause of deprivation is the lack of proper parental care or control, the deprivation is likely to continue or will not be remedied, and it is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A).

The evidence showed that the children were deprived in that they were not properly fed and bathed, and that they lived in an unclean, unhealthy, and unsafe home, and that the cause of such deprivation stemmed from parental neglect. The evidence more than sufficed on these first two factors. Moreover, a rational trier of fact could have found that "these living conditions posed a serious health risk to the children and could affect them physically," thereby satisfying the fourth factor. (Footnote omitted.) *In the Interest of R. W.*, 254 Ga. App. 34, 36-37 (2) (a) (iv) (561 SE2d 166) (2002).

The third factor — the deprivation is likely to continue or will not be remedied — is supported by evidence that DFCS developed several case plans for the mother (and father) for improvement and that she failed to complete each plan. "Evidence of past conduct may properly be considered in determining whether the deprivation would be likely to continue if the children were returned to the parent." (Footnote omitted.) *In the Interest of S. S.*, 259 Ga. App. 126, 128-129 (1) (576 SE2d 99) (2003). Although the mother did improve the cleanliness of the home in the first two case plans, she eventually allowed the home to revert to a filthy condition and failed to maintain the utilities. See *R. W.*, supra, 254 Ga. App. at 36 (2) (a) (iii). Even at the time of the termination hearing, there was evidence that the yard remained unsafe. There were old vehicle batteries, a saw, a weed eater, an open toolbox, and several buckets of oily water lying around the yard, which created a hazardous condition. Moreover, the mother had not shown how she could provide a safe and clean home for the children since at the time of the hearing she stated that she was not living in the family home (there was no power), and that she and the father were two months behind on their bills. She was also unemployed and had been residing with friends for several months. Thus, a rational trier of fact could reasonably conclude that the unhealthy and unsafe conditions would continue and that the children would continue to be deprived while in her care. Id.

(b) *Best Interests of the Children.* The same factors showing the mother's inability to rear the children may also provide evidence that the termination of her rights would be in the best interests of the children. *In the Interest of O. J.*, 257 Ga. App. 1, 3 (1) (b) (570 SE2d 79) (2002). The court may consider the children's need for a secure, stable home. Id. The evidence showed that the mother had inadequate parenting skills and could not properly care for the children. On one occasion when A. C. was three weeks old, the mother gave

him a bottle that was not sterilized. The evidence also showed that at three and a half years old, P. C. could not feed himself, did not know how to sit at a table, and was not toilet trained. All four of the children had some developmental delays and could not speak, chew food, or use the toilet. They were not properly cared for and did not take baths. Caseworkers noted that all of the children were dirty and unkempt. A. C. had severe diaper rash and blisters in the folds of his neck at four months old. The evidence sufficed on this factor.

Accordingly, as a rational trier of fact could have found clear and convincing evidence of parental misconduct or inability and could also have found that termination of parental rights was in the best interests of the children, the court did not err in terminating the mother's parental rights to the children.

2. The mother contends that the court erred in failing to place the children with paternal relatives in Florida. Under former OCGA § 15-11-103 (a) (1),

> [i]f, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family. A thorough search for a suitable family member shall be made by the court and the Department of Human Resources in attempting to effect this placement. A placement effected under this paragraph shall be conditioned upon the family member who is given permanent custody or who is granted an adoption of the child agreeing to abide by the terms and conditions of the order of the court. A placement shall be made under the terms of this paragraph only if such a placement is in the best interest of the child.

The evidence showed that two paternal relatives from Florida were present in court, expressed their desire to adopt the children, and conveyed their ability to care for them. The evidence showed that the relatives had contacted the children, sent them food and clothing as well as other gifts, and visited them on at least one occasion while in the care of the current foster parent. The foster mother expressed love for all of the boys and her desire to adopt them, and the evidence showed that the boys thrived while in her care. P. C.'s school teacher noted that when P. C. was living with his parents he was not as cheerful as he was while in the care of the foster parents.

Here, the court carefully considered the possibility of placing the four children with relatives residing in Florida. The court found that although the Florida relatives showed an interest in the children and

would possibly make good homes for them, the foster mother treated them as her own children and could also provide a good home. The court concluded that it was in the children's best interests to remain in the foster home where they are all together in a safe and stable environment, and have foster parents who love them and have formed a strong bond with them. The court also relied on the statements of a psychologist who testified that the children would likely suffer from a detachment disorder if they were once again displaced from their family environment. The court concluded that the relatives had little contact with the children and had only recently taken an interest in them. As there was evidence to support the court's finding that it was in the best interests of the children not to be placed with relatives, we discern no abuse of discretion.

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED OCTOBER 2, 2003.

*Robert M. Bearden, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, W. Ashley Hawkins*, for appellee.