610 S.E.2d 121 (2005)
271 Ga. App. 470
In the Interest of A.T. et al., children.
No. A05A0131.
Court of Appeals of Georgia.
February 1, 2005.
Sonya R. Chachere-Compton, Douglasville, for Appellant.
Thurbert E. Baker, Attorney General, William C. Joy, Shalen S. Nelson, Senior Assistant Attorneys General, Andrea R. Moldovan, Douglasville, for Appellee.
*122 BLACKBURN, Presiding Judge.
Following the termination of her parental rights to her two children, the mother of A.T. and D.T. appeals, challenging the sufficiency of the evidence. Because no evidence showed any serious physical, mental, emotional, or moral harm to the children, we reverse.
The following standard applies when a parent challenges the sufficiency of the evidence in a termination rights case:
On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.
In the Interest of R.W.[1]
Construed in favor of the judgment, the evidence shows that in February 2002, the mother and her two children (ages four and five, each having a different father) were at a domestic abuse shelter when the mother, who had attempted suicide in the past, became very depressed and needed hospitalization for mental health treatment. The mother had no employment or a stable home. As neither father had legitimated his child and as there were no relatives available to take the children, the local DFACS took custody of the children. At the deprivation hearing, the mother stipulated to deprivation, admitting that she had an undiagnosed and untreated mental health problem and that she was failing to provide a stable home for the children. The court concluded that because the children were deprived, Department of Family and Children Services (DFACS) should have custody.
The case reunification plan required the mother to receive regular mental health treatment, to obtain stable and permanent housing suitable for the children, to obtain and maintain permanent employment, to complete a parenting class, to visit the children regularly, and to support the children financially. Over the next two years, the mother failed to comply with the plan in that she failed to obtain permanent employment or suitable housing or to pay any child support. Inconsistent in receiving mental health treatment in 2002 and early 2003, she did not begin receiving regular mental health treatment until mid-2003. She did complete a parenting class and visited the children fairly regularly, maintaining a strong bond with the children who responded positively to her visits.
DFACS petitioned to terminate her parental rights, which the trial court granted based on her failure to meet the case plan goals. The mother's appeal challenges the sufficiency of the evidence, particularly regarding the lack of any evidence regarding serious physical, mental emotional, or moral harm to the children.
The criteria for terminating a parent's rights are well established.
Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94(a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4)(A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
(Punctuation omitted.) R.W., supra at 523-524(1), 546 S.E.2d 882. Moreover, because the children were not in the custody of the mother, the juvenile court in determining proper parental care and control was required to consider whether the mother without *123 justifiable cause failed significantly for a period of one year or longer (prior to the filing of the petition for termination): (a) to develop and maintain a parental bond with the children in a meaningful, supportive manner; (b) to provide for the care and support of the children as required by law; and (c) to comply with a court-ordered plan designed to reunite the children with the mother. OCGA § 15-11-94(b)(4)(C). See R.W., supra at 525(2), 546 S.E.2d 882.
Some evidence establishes the first three factors for showing parental misconduct or inability. The mother is bound by the trial court's prior finding of deprivation because she did not appeal it, thus establishing the first factor of deprivation. In the Interest of B.F.;[2]In the Interest of E.C.[3] The second factor (lack of parental care is cause of deprivation) is shown by the mother's failure to obtain stable housing or employment as required by the court-ordered case reunification plan (see In the Interest of S.E.L.)[4] or to pay child support, a duty imposed on all parents even if not contained in a specific court order. R.W., supra at 526(2), 546 S.E.2d 882 ("[a] parent ... has a statutory duty to support her children, with or without a court order. OCGA § 19-7-2"). The third factor (cause of deprivation is likely to continue) is shown by the mother's past and continuing failure to obtain stable housing or employment. See R.W., supra at 524(1), 546 S.E.2d 882 ("the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue").
This brings us to the fourth factor: whether any evidence shows that the continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children. As we stated in In the Interest of J.M.,[5] "[h]erein lies the problem." Unlike other cases where we have found evidence of such harm, no caseworker here testified as to any adverse effect on the children by their remaining in foster care as opposed to their being permanently adopted. See, e.g., In the Interest of B.I.F.;[6]In the Interest of A.L.S.S.;[7]In the Interest of M.C.L.[8] Indeed, DFACS conceded it did not have adoptive parents lined up, but was merely in the process of seeking some. See In the Interest of D.F.[9]
Nor do we have any testimony from an expert witness such as a psychologist that permanency and a stable environment were important to these children's well-being (see In the Interest of M.E.S.;[10]In the Interest of N.M.H.),[11] or that the failure to terminate the mother's parental rights would be detrimental to the children (by causing such things as anger problems, school problems, or academic struggles). See In the Interest of S.A.B.[12] We have previously even considered the testimony of children as to their anger at being in foster care and as to their need for a permanent home (id. at 708, 605 S.E.2d 100) as well as the testimony of witnesses that visits or contact with the parent adversely affected the children. N.M.H., supra at 357, 556 S.E.2d 454.
But none of that testimony is present here. Rather, all we have is evidence of the mother's inability to parent her children. *124 "The mother's inability to care for her children does not necessarily mean that her current relationship with them is detrimental." D.F., supra at 862, 555 S.E.2d 225. See In the Interest of K.J.[13] ("the fact that a mother is unemployed, without prospects for future employment, and without any stable living arrangements is not sufficient to terminate parental rights"). Indeed, the evidence was undisputed that she maintained a strong bond with her children through meaningful visits and phone calls. Faced with virtually identical evidence, D.F. reversed the lower court's termination order, explaining:
We find no expert testimony with regard to the effect on the children if the mother's parental rights were not terminated; there is no testimony that the children's relationship with their mother was harmful; and there is no testimony that the children are currently suffering due to their placement in foster care or that without a permanent placement that they would suffer serious harm. We note that the Department presented no identifiable prospects for adoption, and the current foster parents do not want to adopt the children. It appears to us that the Department wishes to terminate the children's existing relationship with their mother, which they cannot show is likely to cause serious harm, in return for the possibility that the children will be placed in an as yet unidentified permanent home.
(Footnote omitted.) D.F., supra at 862, 555 S.E.2d 225. The lack of testimony as to harm has repeatedly caused us to reverse the lower court's order of termination. See In the Interest of J.T.W.[14] (termination order reversed because "[i]t is not obvious that continued exposure to a mother who has difficulty establishing a stable home environment ... will cause serious physical, mental or moral harm to the child"); In the Interest of J.H.[15] (where the only evidence of harm was the suggestion that the mother's living with a fiance would harm the child, termination order reversed); B.F., supra at 892, 560 S.E.2d 738 (reversing termination order because "[t]here was no testimony that any potential or actual harm would result to [the child] from a continued relationship with his father or that [the child] was suffering from being in foster care or that he would suffer if he did not find permanent placement"); J.M., supra at 383, 554 S.E.2d 533 ("[n]o one testified that the children's relationship with [the mother] was harmful to the children"). Where the evidence shows that, to the contrary, the mother and children are bonded and emotionally close (as here), the lack of specific evidence regarding potential harm mandates reversal even more strongly. J.T.W., supra at 36(2)(d), 606 S.E.2d 59; In the Interest of J.H.;[16]B.F., supra at 891, 560 S.E.2d 738.
"Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship." J.T.W., supra at 37-38(2)(d), 606 S.E.2d 59. In the absence of evidence meeting the fourth factor of showing harm to the children here, we are required to reverse the termination order. Id.
Judgment reversed.
MILLER and BERNES, JJ., concur.
NOTES
[1] In the Interest of R.W., 248 Ga.App. 522-523(1), 546 S.E.2d 882 (2001).
[2] In the Interest of B.F., 253 Ga.App. 887, 890, 560 S.E.2d 738 (2002).
[3] In the Interest of E.C., 225 Ga.App. 12, 14-15, 482 S.E.2d 522 (1997).
[4] In the Interest of S.E.L., 251 Ga.App. 728, 730(2)(b), 555 S.E.2d 115 (2001).
[5] In the Interest of J.M., 251 Ga.App. 380, 383(4), 554 S.E.2d 533 (2001).
[6] In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003).
[7] In the Interest of A.L.S.S., 264 Ga.App. 318, 323(1), 590 S.E.2d 763 (2003).
[8] In the Interest of M.C.L., 251 Ga.App. 132, 136(1)(b), 553 S.E.2d 647 (2001).
[9] In the Interest of D.F., 251 Ga.App. 859, 862, 555 S.E.2d 225 (2001).
[10] In the Interest of M.E.S., 263 Ga.App. 132, 139(3), 587 S.E.2d 282 (2003).
[11] In the Interest of N.M.H., 252 Ga.App. 353, 358, 556 S.E.2d 454 (2001).
[12] In the Interest of S.A.B., 269 Ga.App. 705, 709, 605 S.E.2d 100 (2004).
[13] In the Interest of K.J., 226 Ga.App. 303, 305(1), 486 S.E.2d 899 (1997).
[14] In the Interest of J.T.W., 270 Ga.App. 26, 37(2)(d), 606 S.E.2d 59 (2004).
[15] In the Interest of J.H., 267 Ga.App. 541, 545-546, 600 S.E.2d 650 (2004).
[16] In the Interest of J.H., 258 Ga.App. 211, 216, 573 S.E.2d 481 (2002).