A05A0433, A05A0434. IN THE INTEREST OF J. W. M., a child
(two cases).
(614 SE2d 163)

MILLER, Judge.

On August 6, 2004, the juvenile court terminated the parental rights of the mother of three-year-old J. W. M. In Case No. A05A0434, the mother claims the juvenile court erred in (i) terminating her parental rights and (ii) failing to comply with the statutory requirements for placing the child with a suitable relative following termination of her parental rights. In Case No. A05A0433, the maternal grandmother of J. W. M. contends the juvenile court erred in (i) failing to consider her as a placement for the child and (ii) abusing its

discretion by refusing to place the child with her following the termination of the mother's parental rights. For the reasons set forth below, we affirm in both cases.

## Case No. A05A0434

A juvenile court's termination of parental rights is a two-step process:

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Footnotes omitted.) *In the Interest of T. F.*, 250 Ga. App. 96, 97-98 (1) (550 SE2d 473) (2001). See OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv). "On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." (Footnote omitted.) *In the Interest of F. C.*, 248 Ga. App. 675 (549 SE2d 125) (2001).

1. *Parental misconduct or inability.* Construing the evidence in a light most favorable to the juvenile court's findings, we consider the factors for showing parental misconduct or inability.

(a) *Deprivation.* In July 2002, following an evidentiary hearing, the juvenile court entered an order finding J. W. M. to be deprived and placing temporary custody of the child with the Georgia Department of Human Resources (the Department), acting through the Whitfield County Department of Family and Children Services (DFCS). According to the deprivation order, the Department had previously taken immediate custody of J. W. M. after receiving information that the mother was being evicted from her home. The juvenile court determined that the mother had been unable to provide appropriately for J. W. M. and that the child was deprived. Since the deprivation order was not appealed, the mother was bound by its findings

for purposes of the termination proceedings. See *In the Interest of J. H.*, 244 Ga. App. 788, 792 (2) (536 SE2d 805) (2000).

(b) *Lack of proper parental care or control is the cause of the deprivation.* "When the children are not in the custody of the parent whose rights are in jeopardy, the court considers[, among other things,] whether that parent, without justifiable cause, failed significantly for a period of one year or longer prior to the filing of the termination petition to provide for the care and support of the child, as required by law or judicial decree, or to comply with a court ordered plan for reunification." *In the Interest of D. L.*, 268 Ga. App. 360, 362 (1) (601 SE2d 714) (2004); OCGA § 15-11-94 (b) (4) (C) (ii), (iii). See also OCGA § 15-11-94 (b) (4) (B) (i) through (vi).

The juvenile court concluded that the mother had failed, without excuse, to pay the court ordered child support for J. W. M. Evidence showed that the mother was subject to a court order to pay child support of $35 per week but was $759.42 in arrears on her child support obligations. The juvenile court also concluded that the mother had failed for a period of more than 12 months to complete her reunification case plan. The plan required the mother to maintain steady employment and stable housing, complete a parenting class and improve her parenting skills, pay child support, obtain a psychological evaluation, and follow through with recommended treatment. The juvenile court found that although the mother visited the child regularly, her other plan goals were not met. Although the mother made some progress in her plan goals, evidence supports the juvenile court's conclusion that the mother failed to comply with her court ordered reunification case plan. Based on the foregoing, we conclude that any rational trier of fact could find by clear and convincing evidence that the mother's lack of parental care and control was the cause of J. W. M.'s deprivation. See *In the Interest of H. Y.*, 270 Ga. App. 497, 503-504 (1) (b) (606 SE2d 679) (2004) (considering parent's failure to comply with her reunification case plan goals as a factor in concluding that parent's inability to care for her children was the cause of their deprivation).

(c) *The cause of the deprivation is likely to continue.* "The court may consider past conduct of the parent in making its determination that such conditions of deprivation are likely to continue. Such an inference is appropriate, since the juvenile court is not required to reunite [J. W. M.] with [the mother] in order to obtain current evidence of deprivation or neglect." (Citations omitted.) *In the Interest of D. S.*, 247 Ga. App. 569, 573 (545 SE2d 1) (2001). At the time of the termination hearing, the mother was unemployed. She had moved into a new residence one month before the termination hearing and had not paid the first month's rent. Based on the mother's continued instability in housing and employment and her failure to comply with

her reunification case plan, the juvenile court was entitled to conclude by clear and convincing evidence that the cause of J. W. M.'s deprivation was likely to continue. See *In the Interest of A. M. W.*, 249 Ga. App. 22, 24 (547 SE2d 401) (2001) (parent's current unemployment at time of termination hearing, failure to pay child support, and failure to comply with DFCS case plan was evidence that child's deprivation would continue if parent's parental rights were not terminated).

(d) *The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.* As the juvenile court found in its termination order, numerous witnesses at the termination hearing testified to the lack of bond between the mother and J. W. M. The child's first foster parent testified that there was no deep bond between the mother and child, and that "every time she gets him and stuff, he wants down. He wants away." The child's current foster mother also testified that at the hospital J. W. M. did not want to stay in his mother's lap, and wanted to be in his foster parent's lap. On one occasion the child became upset and was observed yelling "no, mommy, no, mommy" when held by his mother. After scheduled visitations with his mother, J. W. M. became upset and had nightmares, and he did not want his foster mother to leave either to go to work or to go into another room at night. According to a visitation center employee, the mother interacted mostly verbally with J. W. M., and occasionally told the child to "shut up." After visitation, the child ran to his foster parents and had to be prompted to say good-bye to his mother. The citizen review panel coordinator testified that there was no bond between mother and child, and described the mother's attitude as "flippant."

On the other hand, evidence is undisputed that J. W. M. had bonded with his foster parents, and appeared to be comfortable with them. The foster parents indicated they would attempt to adopt the child should adoption become an option. Evidence of a lack of parental bond between the natural parent and child, that the child has adapted well to foster care, and that the foster parents wish to adopt will together support the juvenile court's conclusion that continued deprivation is likely to harm the child. *In the Interest of J. K.*, 239 Ga. App. 142, 146 (1) (520 SE2d 19) (1999); *In the Interest of A. C.*, 230 Ga. App. 395, 398 (1) (496 SE2d 752) (1998). Accordingly, the juvenile court was entitled to find that clear and convincing evidence showed J. W. M.'s continued deprivation would likely cause serious harm to J. W. M.

2. *Best interest of the child.* If the juvenile court finds clear and convincing evidence of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional,

and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a). The same evidence showing parental misconduct or inability may establish that the children's best interests require the termination of the natural parents' rights. See *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998). Given that evidence showed the continued inability of the mother to address the cause of J. W. M.'s deprivation and that the child has an opportunity to be adopted by his current foster parents, the juvenile court was authorized to determine that termination of the natural mother's rights was in J. W. M.'s best interest. See *In the Interest of D. J. F.*, 269 Ga. App. 783, 790 (2) (605 SE2d 407) (2004) (citing desire of child's foster parents to adopt and lack of meaningful bond with natural father in finding that evidence supported juvenile court's conclusion that termination of father's parental rights was in child's best interest).

3. The mother complains that the juvenile court failed to comply with OCGA § 15-11-103 (a) (1) in considering the grandmother's intervention for custody. See generally *In the Interest of C. L. R.*, 232 Ga. App. 134, 139 (3) (501 SE2d 296) (1998) (ruling on the merits of mother's claim that juvenile court erred in failing to consider placement with the child's paternal grandmother). In particular, she contends that the Department and the juvenile court did not (i) attempt to place J. W. M. with his maternal grandmother, who was a suitable blood relative who was ready, willing, and able to care for the child, or (ii) investigate the grandmother to determine if she was qualified to receive and care for the child.

OCGA § 15-11-103 (a) (1) provides:

If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, *if the court determines such placement is the most appropriate for and in the best interest of the child.*

(Emphasis supplied.)

Contrary to the mother's assertion, the juvenile court did consider the maternal grandmother as a placement for J. W. M. The grandmother appeared at the termination hearing, represented by counsel, and, although she was not recognized as a party to the termination proceeding, her counsel was allowed to cross-examine

witnesses regarding the grandmother's fitness for custody. She was also allowed to introduce evidence. After the hearing, the juvenile court specifically considered placing custody of J. W. M. with his grandmother, but concluded that such a placement was not in the best interest of the child. "A trial court's determination that placement with a relative is not in the best interest of the child will not be disturbed by this Court absent an abuse of discretion." (Citation and punctuation omitted.) *In the Interest of J. B. C.*, 269 Ga. App. 529, 530 (604 SE2d 606) (2004).

As the juvenile court noted, the grandmother rejected the possibility of placement of J. W. M. with her when the child first entered the Department's care. When the grandmother later expressed interest in taking custody of the child, a worker visited the grandmother's home and reported to the Department that it was not a suitable placement. The grandmother later intervened for the purpose of obtaining custody, but failed to appear for the hearing on the matter. By the time of the termination proceedings and the juvenile court's consideration of the grandmother's second motion to intervene, the child had spent virtually half his life in the home of his foster parents. The juvenile court concluded that "it is [not] in the best interest of the child to tear him from the people to whom he is bonded as his parent figures. To do so would be detrimental to the child." See, e.g., *In the Interest of C. L. R.*, supra, 232 Ga. App. at 139 (3) (taking into account evidence of foster parent's intent to adopt and that child had no bond with grandmother in finding no abuse of discretion in failing to place child with grandmother following termination of the mother's parental rights). The juvenile court was also concerned that the mother would have unfettered access to J. W. M. should he be placed with the grandmother. See, e.g., *In the Interest of H. H.*, 257 Ga. App. 173, 177 (2) (570 SE2d 623) (2002) (juvenile court was concerned placement with grandparents was a ruse to return child to mother). Based on the foregoing, we conclude that the trial court considered the maternal grandmother as a placement for the child, and that it did not abuse its discretion when it refused to award custody to the grandmother.

The mother also complains that the Department failed to investigate the maternal grandmother to determine if she was a suitable placement for J. W. M. The Department did investigate the grandmother's home when she first requested custody of the child but did not pursue the matter after receiving a negative report. This report was not submitted into evidence, however, and there is no testimony regarding its substantive content. Although the juvenile court could have ordered an additional home study, a positive report on the grandmother's home would not entitle her to custody of the child. See *In the Interest of C. L. R.*, supra, 232 Ga. App. at 139 (3) (a relative may be qualified and yet placement may not be in the best interest of the

child). The juvenile court indicated that its findings were based on the best interest of the child, regardless of whether the grandmother's home was or was not an appropriate placement for the child. Thus, the grandmother could not reasonably expect that a positive investigative report would have changed the juvenile court's conclusions. Compare *In the Interest of J. B. C.*, 261 Ga. App. 7 (581 SE2d 665) (2003) (case remanded for consideration of aunt as placement for the child). We find that the juvenile court had sufficient information to determine that the best interest of the child would not be served by placement with the grandmother, and, under the facts of this case, additional investigation into the grandmother's qualifications was not a prerequisite to the juvenile court's ruling.

### Case No. A05A0433

4. The maternal grandmother of J. W. M. contends the juvenile court (i) erred in failing to properly consider her as a placement for the child and (ii) abused its discretion in refusing to place custody of J. W. M. with her following termination of the mother's parental rights. Because the juvenile court allowed the grandmother to participate in the hearing, and also ruled on the merits of the grandmother's petition to intervene for custody, we will consider her claims here. See *In the Interest of L. M. J.*, 247 Ga. App. 756 (1) (545 SE2d 127) (2001) (allowing grandmother to appeal from a termination order finding that placement of the child with the grandmother was not in the child's best interest because the trial court effectively granted the grandmother's motion to intervene by allowing her to participate in the proceeding). However, for the reasons stated in Division 3 above, we find that the juvenile court properly considered the grandmother as a placement for the child, and the juvenile court did not abuse its discretion in refusing to award custody to the grandmother.

*Judgments affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED APRIL 19, 2005.

*Rodney Q. Quarles*, for appellant (case no. A05A0433).

*Joshua J. Smith*, for appellant (case no. A05A0434).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Richard K. Murray*, for appellee.