641 S.E.2d 598 (2007)
In the Interest of K.W. et al, children.
No. A07A0156.
Court of Appeals of Georgia.
February 1, 2007.
*599 Josephine B. Jones, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Andrew S. Foster, for appellee.
BERNES, Judge.
The Juvenile Court of Bibb County terminated the parental rights of the mother of K.W. and X.W. and placed the two children in the permanent legal custody of the Bibb County Department of Family and Children Services ("DFCS"). The mother appeals, contending that there was insufficient evidence to terminate her parental rights and that the juvenile court should have awarded custody of the children to the maternal great aunt. For the reasons discussed below, we affirm.
On appeal from an order terminating parental rights, we construe the evidence in the light most favorable to the juvenile court's order. In the Interest of A.T., 271 Ga.App. 470, 471, 610 S.E.2d 121 (2005). Construed in this light, the evidence reflects that the mother of K.W. and X.W. has had a longstanding problem with crack cocaine addiction dating back to the 1990s. Over the ensuing years, the mother has been involved in four or five drug treatment programs, but has relapsed on multiple occasions back into drug use.
K.W. and X.W. were placed in the temporary custody of DFCS in 2003.[1] K.W. was nine years old and X.W. was two years old. Following the children's removal, DFCS developed a series of court-approved case plans aimed at reuniting the mother with the children. The mother was required to maintain a source of income and adequate housing; attend parenting classes; provide six consecutive months of negative drug screens; obtain a psychological evaluation; pay child support; visit the children; and complete a drug treatment program. The mother failed to complete her reunification case plans, and, as a result, the juvenile court authorized changing the goal of the case plans to non-reunification.
DFCS subsequently petitioned to terminate the mother's parental rights to K.W. and X.W.[2] After conducting an evidentiary hearing, the trial granted the motion based on the mother's chronic drug abuse problem, her failure to provide any care and support for her children, and her failure to complete her case plan goals or take any other steps to become an effective parent. The juvenile court thereafter conducted a custody hearing and entered an order declining to grant the maternal great aunt legal custody of the children and instead awarding DFCS permanent *600 custody for the purpose of adoption. The mother now appeals these rulings.
1. The mother contends that there was insufficient evidence to support the termination of her parental rights to K.W. and X.W. We disagree.
Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94(a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4)(A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
(Citation omitted.) In the Interest of A.T., 271 Ga.App. at 472, 610 S.E.2d 121. We will address these factors each in turn.
(a) The Children Must Be Deprived. Regarding the first factor, the juvenile court previously found that K.W. and X.W. were deprived and entered deprivation and extension orders that the mother never appealed. As such, the mother is bound by the juvenile court's finding of deprivation. In the Interest of M.M., 276 Ga.App. 211, 213, 622 S.E.2d 892 (2005); In the Interest of R.G., 249 Ga. App. 91, 93(1)(a), 547 S.E.2d 729 (2001).
(b) Lack of Proper Parental Care or Control Must Cause the Deprivation. As to the second factor, the juvenile court had to consider the conditions set forth in OCGA § 15-11-94(b)(4)(B), including whether the parent has a history of chronic unrehabilitated drug use "rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition[s] and needs of the child." OCGA § 15-11-94(b)(4)(B)(ii). Additionally, because K.W. and X.W. were not in their mother's custody, the juvenile court was required to consider
whether the parent without justifiable cause failed significantly for a period of one year or longer (1) to communicate or make a bona fide attempt to communicate with the child in a meaningful, supportive, parental manner; (2) to provide for the care and support of the child; and (3) to comply with a court-ordered plan to reunite the child with the parent. OCGA § 15-11-94(b)(4)(C).
(Citation omitted.) In the Interest of L.G., 273 Ga.App. 468, 471(2)(b), 615 S.E.2d 551 (2005).
The mother admitted at the termination hearing that she had suffered from a chronic crack cocaine addiction since 1994. She acknowledged that over the years she had made several attempts to end her addiction through drug treatment programs, but had repeatedly relapsed into drug use. And, the mother conceded that her chronic drug addiction has interfered with her ability to parent K.W. and X.W. The juvenile court was entitled to weigh this evidence in favor of finding that a lack of parental care and control caused the deprivation of the children. See In the Interest of H.D.T., 273 Ga.App. 863, 866(b), 616 S.E.2d 196 (2005); In the Interest of L.G., 273 Ga.App. at 472(2)(b), 615 S.E.2d 551.
A consideration of the conditions set forth in OCGA § 15-11-94(b)(4)(C) likewise justifies the finding of the juvenile court. In this respect, the DFCS case manager testified that the mother had only sporadic contact with her children and that, other than obtaining a psychological evaluation, she had failed to complete any of the goals contained in the case plans approved by the juvenile court. See OCGA § 15-11-94(b)(4)(C)(i),(iii). Furthermore, DFCS presented evidence that the mother had failed to pay any child support. See OCGA § 15-11-94(b)(4)(C)(ii).
This combined evidence presented at the termination hearing amply supported the juvenile court's conclusion that the mother's lack of parental care and control caused the deprivation of K.W. and X.W. DFCS therefore established the second factor required for terminating parental rights.
*601 (c) Cause of the Deprivation Must Be Likely To Continue. Regarding the third factor, it is well settled that "[a] juvenile court may consider past conduct of a parent in deciding whether deprivation is likely to continue." (Citation omitted.) In the Interest of T.B., 267 Ga.App. 484, 486(1), 600 S.E.2d 432 (2004). As such, the mother's history of chronic unresolved drug problems, her failure to achieve her case plan goals, and her sporadic visitation of K.W. and X.W. over the past several years counseled in favor of the juvenile court's finding that the deprivation was likely to continue. See In the Interest of L.G., 273 Ga.App. at 474(2)(c), 615 S.E.2d 551; In the Interest of B.C., 250 Ga.App. 152, 156(2), 550 S.E.2d 707 (2001); In the Interest of D.L.D., 248 Ga.App. 149, 153, 546 S.E.2d 11 (2001). Moreover, the mother testified that she has two other children who are not in her custody and who have been placed with relatives for several years, which provided additional evidence that the deprivation of K.W. and X.W. was likely to continue. See In the Interest of S.L.B., 265 Ga.App. 684, 688(1), 595 S.E.2d 370 (2004); In the Interest of T.L.H., 240 Ga.App. 201, 203, 523 S.E.2d 50 (1999). Finally, there was direct evidence of present unfitness, in that the mother testified that she is currently unemployed, is wholly dependent upon her family to support her, and still has not been able to successfully complete a drug treatment program. Under these circumstances, the juvenile court did not err in finding that the deprivation was likely to continue.
(d) Continued Deprivation Must Be Likely To Harm the Children. As to the fourth factor, we have held that
[t]he same evidence demonstrating that the children's deprivation is likely to continue also supports a finding that continued deprivation would cause serious physical, mental, or moral harm to the children. However, we recently have cautioned against taking an automatic approach in this regard. There must be evidence in the record that goes beyond showing simply an inability to parent one's children.
(Citations, punctuation and footnote omitted.) In the Interest of L.G., 273 Ga.App. at 475(2)(d), 615 S.E.2d 551.
Such evidence was present in the instant case. The mother's repeated failure to remain drug free, combined with her failure to complete the essential elements of her case plan, demonstrated an "unresolved pattern[ ] of misbehavior [that] would be likely to cause severe emotional harm to the children." (Citation omitted.) In the Interest of L.W., 276 Ga.App. 197, 201(2), 622 S.E.2d 860 (2005). See also In the Interest of A.B., 274 Ga.App. 230, 232, 617 S.E.2d 189 (2005). Furthermore, K.W. has been out of her mother's custody on and off since her birth in 1994, while X.W. has been out of his mother's custody since 2003 when he was two years old, and "it is well established that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Footnote omitted.) In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003). Finally, the DFCS caseworker testified that if the termination petition is not granted, the children will be harmed as a result of the instability and lack of permanence, and the juvenile court was entitled to consider this testimony and weigh it in favor of finding that the fourth factor had been satisfied. See id. For these reasons, we conclude that the juvenile court's finding that the continued deprivation is likely to seriously harm K.W. and X.W. is supported by the record.
(e) Termination Must Be in the Best Interests of the Children. As to the fifth and final factor, the same evidence discussed above that was presented at the termination hearing supported the juvenile court's finding that the termination of the mother's parental rights would be in the best interests of K.W. and X.W. See In the Interest of L.G., 273 Ga.App. at 476(2)(e), 615 S.E.2d 551; In the Interest of A.B., 274 Ga.App. at 233, 617 S.E.2d 189. We also note that the guardian ad litem testified that granting the termination petition would be in the best interests of the children, which also supported the juvenile court's finding. See In the Interest of C.N.I., 280 Ga.App. 305, 310-311(5), 633 S.E.2d 660 (2006); In the Interest of D.J., 279 Ga.App. 355, 361(2)(e), 631 S.E.2d 427 (2006).
*602 2. The mother next contends that the juvenile court erred in awarding permanent custody of K.W. and X.W. to DFCS rather than to the maternal great aunt. Again, we disagree.
OCGA § 15-11-103(a)(1) provides:
If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child. . . .
(Emphasis supplied.) "Inasmuch as there is no conclusive preference given to relatives," the juvenile court is afforded wide discretion to determine whether a child should be placed with a relative or kept in a stable foster home. (Footnote omitted.) In the Interest of R.G., 249 Ga.App. at 97(4), 547 S.E.2d 729. "[I]f the judgment is supported by any evidence and is not clearly erroneous, an appellate court is not authorized to set it aside." (Citation and punctuation omitted.) In Interest of C.N.G., 204 Ga.App. 239, 240(3), 419 S.E.2d 42 (1992).
The evidence presented at the custody hearing showed that while the maternal great aunt received a favorable home evaluation from DFCS, she had made no effort to visit K.W. and X.W. since they came into foster care in 2003 and had not sought to have them placed with her until after the termination petition had been filed. Moreover, K.W. had been placed with the great aunt approximately ten years before, but the great aunt had ultimately relinquished custody to DFCS because the mother was too unruly and had interfered with the placement. In contrast, the evidence reflected that K.W. and X.W. had been in stable foster care placements for the past two years where they were both thriving and had bonded with their foster parents, who were ready and willing to adopt them. In addition, the guardian ad litem for the children opined that it would be in their best interests to remain in DFCS custody for the purpose of adoption.
In light of these circumstances, the juvenile court did not err in concluding that it was in the best interests of K.W. and X.W. to place them in the permanent custody of DFCS for the purpose of adoption rather than with their maternal great aunt. OCGA § 15-11-103(a)(1). See, e.g., In the Interest of J.W.M., 273 Ga.App. 20, 25-26(3), 614 S.E.2d 163 (2005) (holding that "a positive report on the grandmother's home would not entitle her to custody of the child," when the juvenile court otherwise found that placement with the grandmother would not be in the child's best interest) (citation omitted); In the Interest of G.C., 263 Ga.App. 503, 507(2), 588 S.E.2d 297 (2003) (upholding juvenile court's decision not to place children with relatives, when the children were in stable foster care placements and were bonded to their foster parents, and the relatives "had little contact with the children" while in foster care); In the Interest of C.L.R., 232 Ga.App. 134, 139(3), 501 S.E.2d 296 (1998) (juvenile court was entitled to decline permanently placing child with grandmother, when the child was bonded to the foster mother who intended to adopt her, and the grandmother had visited the child only a few times and had not bonded with her). "Under the any evidence standard of review, we discern no abuse of that discretion here." (Punctuation and footnote omitted.) In the Interest of R.G., 249 Ga.App. at 97(4), 547 S.E.2d 729.
Judgment affirmed.
BLACKBURN, P.J., and RUFFIN, J., concur.
NOTES
[1] K.W. had previously been removed from the custody of her mother in 1994 but was returned in 1997.
[2] DFCS also petitioned to terminate the parental rights of the putative fathers of K.W. and X.W., and the juvenile court granted the petition. However, the putative fathers have not appealed the termination of their parental rights and thus are not parties to the instant appeal.