678 S.E.2d 213 (2009)
In the Interest of K.C.W. et al., children.
No. A09A0783.
Court of Appeals of Georgia.
May 12, 2009.
*214 James G. Baker, LaGrange, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Sr. Asst. Atty. Gen., Kathryn A. Fox, Asst. Atty. Gen., Hunnicutt & Taylor, James T. Hunnicutt, for appellee.
BERNES, Judge.
The mother of K.C.W. and B.K.W. appeals the juvenile court's order terminating *215 her parental rights.[1] Concluding that sufficient evidence supported the juvenile court's decision, we affirm.
On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Citation and punctuation omitted.) In the Interest of R.N.H., 286 Ga.App. 737, 650 S.E.2d 397 (2007).
So viewed, the record showed that the mother had struggled with cocaine and alcohol addiction since before her children were born. In early December 2005, the children were placed in the emergency custody of the Troup County Department of Family and Children Services ("DFCS") after the mother could not be located. The mother later admitted that she had been "on the other side of town" getting high and had "lost track of time." At the time of their removal, K.C.W. was six years old and B.K.W. was thirteen years old.
The juvenile court subsequently entered an order finding the children deprived and awarding temporary custody of them to DFCS. The court found that the mother suffered from substance abuse, had failed to supervise her children, and had failed to provide adequate housing for her children. The mother stipulated to the finding of deprivation and did not appeal from the juvenile court's order.
DFCS developed a reunification case plan for the mother that required her, among other things, to complete a drug and alcohol treatment program; to remain drug and alcohol free for six consecutive months; to complete parenting classes; to obtain and maintain a source of income to support her children; and to obtain and maintain housing adequate for herself and her children. The juvenile court entered a supplemental order incorporating the terms of the case plan and a separate order requiring the mother to pay $25 per week in child support.
One year after her children were placed in foster care, the mother made her first attempt at obtaining substance abuse treatment. The mother enrolled in a drug and alcohol treatment program in Atlanta, but she stayed only a few months before being discharged for failing to meet the program's requirement of obtaining employment.
After she was discharged, the mother moved to Anchorage, Alaska, where she entered a second drug and alcohol treatment program. Shortly thereafter, DFCS placed the children with a maternal aunt living in that same city. Approximately six months later, however, the mother was discharged from the second treatment program after testing positive for cocaine. At that point, the maternal aunt was no longer willing to serve as a placement for the children, and they returned to the care of their original foster parents in Georgia.
Following her discharge from the second treatment program, the mother lived in a homeless shelter for two months. By her own admission, the mother relapsed and consumed alcohol during this time period. Then, in December 2007, the mother enrolled in a third drug and alcohol treatment program in Anchorage.
Based on her failure to complete her reunification case plan, DFCS filed its petition to terminate the mother's parental rights in March 2008. In June 2008, prior to the termination hearing, the mother completed the inpatient component of the drug and alcohol treatment program, but she had not completed the outpatient component of the program by the time of the hearing.
At the termination hearing conducted in July 2008, the case manager for the children testified that although the children had been in DFCS custody for 31 months, the mother still had not completed a drug and alcohol *216 treatment program or parenting classes. The case manager further testified that the mother had remained unemployed since the time when the children came into care, did not have suitable housing for raising the children, and had failed to pay any child support. Additionally, the case manager testified that the children were placed with foster parents who wanted to adopt them.
An expert psychologist who had evaluated the mother testified that she suffered from polysubstance dependency, a disorder in which an individual is dependent on a number of different drugs. The psychologist opined that the mother "would have severe difficulty parenting" her children absent sufficient treatment and would need "long-term intensive intervention[]" lasting one year or more "[b]ased on her history." According to the psychologist, an individual generally could have up to eight relapses of drug use before he or she would "gain control of the substance use," and the likelihood of recovery from substance abuse decreases with each successive failed attempt at treatment. Furthermore, the psychologist testified that a treatment program is a "controlled situation" and that a patient's success in overcoming his or her addiction could only be properly evaluated after the patient had completed the program and remained drug free for some amount of time afterward.
The mother testified at the termination hearing that she was forty-six years old and had struggled with alcohol addiction for over twenty years and with cocaine addiction for over ten years. According to the mother, she had been involved in several treatment programs before her children were removed by DFCS, but had always relapsed into drug and alcohol abuse. The mother further testified that she was currently living in a "transitional house" as part of the outpatient component of her treatment in Anchorage. She conceded that her children could not live with her in the transitional home and that she lacked current employment. Finally, the mother admitted that her children have been "emotionally and psychologically traumatized" by her addiction and that she "would never want them to go through that again."
After hearing the testimony and admitting several of its prior orders into evidence, the juvenile court granted the termination petition and authorized DFCS to seek adoption for the children. Following entry of the juvenile court's order, the mother filed an application for a discretionary appeal, which was granted.[2] This appeal followed.
Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94(a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4)(A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
(Citation omitted.) In the Interest of R.N.H., 286 Ga.App. at 739-740, 650 S.E.2d 397. In the present case, the mother challenges only two of the required findings, asserting that the juvenile court erred in finding that the cause of the children's deprivation was likely to continue and that termination of her parental rights would be in their best interests.
1. Clear and convincing evidence supported the juvenile court's finding that the cause of the deprivation was likely to continue. In addressing this issue, the juvenile court was entitled to consider the past conduct of the mother. In the Interest of T.B., 267 Ga.App. 484, 486(1), 600 S.E.2d 432 (2004). Accordingly, the mother's history *217 of chronic unresolved drug and alcohol problems, her use of cocaine and alcohol even after her children had been removed from her care, and her failure to complete her reunification case plan counseled in favor of the juvenile court's finding that the deprivation was likely to continue. See In the Interest of J.S., 292 Ga.App. 86, 89, 663 S.E.2d 793 (2008); In the Interest of R.N.H., 286 Ga.App. at 741(1)(c), 650 S.E.2d 397; In the Interest of K.W., 283 Ga.App. 398, 401(1)(c), 641 S.E.2d 598 (2007); In the Interest of L.G., 273 Ga.App. 468, 474(2)(c), 615 S.E.2d 551 (2005). Furthermore, the mother's voluntary decision to relocate across the country and remain there even after her children were returned to foster care in Georgia, and her resulting failure to maintain a consistent relationship with her children also counseled in favor of the court's finding. See id. Finally, there was direct evidence of present unfitness that pointed toward continued deprivation in that at the time of the termination hearing, the mother still had not successfully completed a drug and alcohol treatment program, did not have a job or a suitable home for the children, and had failed to pay any child support. See In the Interest of R.N.H., 286 Ga.App. at 741(1)(c), 650 S.E.2d 397; In the Interest of K.W., 283 Ga.App. at 401(1)(c), 641 S.E.2d 598; In the Interest of J.W.M., 273 Ga.App. 20, 22-23(1)(c), 614 S.E.2d 163 (2005).
In contrast, the mother emphasizes her recent completion of the inpatient component of the drug and alcohol treatment program in which she is currently enrolled in Anchorage. The mother suggests that her successful completion of inpatient treatment, which occurred after DFCS filed its petition to terminate her parental rights, proves that she has been rehabilitated and that continued deprivation is unlikely. But "in considering recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation." (Citation and punctuation omitted.) In the Interest of D.L.S., 271 Ga.App. 311, 314(1)(c), 609 S.E.2d 666 (2005). And a trial court is authorized to assign less weight to "assertions of sudden parental fitness" when compared to other evidence presented at the termination hearing. See In the Interest of L.G., 273 Ga.App. at 474(2)(c), 615 S.E.2d 551. See also In the Interest of D.L.S., 271 Ga.App. at 314(1)(c), 609 S.E.2d 666 ("A few months of partial stability do not establish that the parent is capable of maintaining the progress.") (citation and punctuation omitted). Here, the mother conceded that she has not yet completed a drug and alcohol treatment program in its entirety, as required by her reunification case plan. This fact is significant, given that during the 31 months her children have been in DFCS custody, the mother twice failed to complete treatment programs in which she was enrolled. Moreover, the mother herself admitted that she had participated in several treatment programs prior to the time the children were removed from her custody but on each occasion had relapsed into drug abuse. Lastly, as previously noted, the psychologist who evaluated the mother testified that a patient's success in overcoming his or her addiction could only be properly evaluated after the patient had completed the treatment program and remained drug free for a period of time thereafter. As such, the juvenile court was entitled to give little credence to the mother's claim of recent improvement and find that the deprivation was likely to continue. See In the Interest of L.G., 273 Ga.App. at 474-475(2)(c), 615 S.E.2d 551; In the Interest of D.L.D., 248 Ga.App. 149, 153-154, 546 S.E.2d 11 (2001).
2. The juvenile court's finding that termination of the mother's parental rights was in the children's best interests also was supported by clear and convincing evidence. "The same facts that support a juvenile court's conclusion that a child is deprived and that the deprivation is likely to continue if placed with the parent also support a conclusion that termination of parental rights would be in the child[ren's] best interest[s]." (Punctuation and footnote omitted.) In the Interest of D.W., 294 Ga. App. 89, 93(2), 668 S.E.2d 533 (2008). The mother's long history of unresolved drug and alcohol abuse, her failure to successfully complete a treatment program, and her failure to complete the essential elements of her reunification case plan "demonstrated an unresolved pattern of misbehavior that would *218 be likely to cause severe emotional harm to the children" and supported a finding that termination would be in their best interests. (Citation and punctuation omitted.) In the Interest of K.W., 283 Ga.App. at 401-402(1)(d), (e), 641 S.E.2d 598. The fact that the foster parents of the children wished to adopt them also counseled in favor of the juvenile court's finding. See In the Interest of B.J.F., 276 Ga.App. 437, 443(2), 623 S.E.2d 547 (2005). Lastly, "in determining that termination of the [mother's] parental rights would serve the best interests of the children, the court properly concerned itself with the need for stability in the children's lives." (Citation and punctuation omitted.) In the Interest of C.F., 251 Ga.App. 708, 714(2), 555 S.E.2d 81 (2001). See In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003) ("[I]t is well established that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems.") (footnote omitted). At the time of the termination hearing, the children had been in DFCS custody for 31 months, had been forced to relocate to Alaska and back to Georgia once before when their mother had relapsed into drug use, and by their mother's own admission had been "emotionally and psychologically traumatized" by her ongoing struggle with addiction. The juvenile court thus was entitled to find that termination of the mother's parental rights would be in the best interests of the children. See id.
Judgment affirmed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] The juvenile court also terminated the parental rights of the fathers of the children, who are not parties to this appeal. We separately address the appeal of the father of K.C.W. in Case No. A09A0943.
[2] In 2007, the General Assembly amended OCGA § 5-6-35(a) to require an application for discretionary appeal in cases where the petition to terminate parental rights is filed on or after January 1, 2008. See OCGA § 5-6-35(a)(12); Ga. L. 2007, p. 554, §§ 3, 8. See also In the Interest of K.R., 285 Ga. 155, 674 S.E.2d 288 (2009).